IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FERNANDO GODINEZ, | ) | CASE NO. 3:15 CV 00016 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE THOMAS M. PARKER |
| | ) | |
| RON ERDOS, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## I. Introduction

Fernando Godinez signed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 on November 14, 2014, which was filed with this court on January 5, 2015.[1] Pursuant to Local Rule 72.2, this matter was referred for a report and recommendation to former Magistrate Judge Greg White on January 5, 2015. Following Magistrate Judge White's retirement, this matter was referred to the undersigned for report and recommendation.[2] Respondent filed a Return of Writ on March 30, 2015, opposing Godinez' petition.[3]

For the reasons set forth below, it is recommended that the petition for writ of habeas corpus be DENIED.

---

[1] ECF Doc. No. 1, at Page ID Nos. 1-7.
[2] March 29, 2016, Minute Order under the authority of General Order 2016-3.
[3] ECF Doc. No. 5, at Page ID Nos. 15-47.

## II. Factual Background

### A. Original Proceedings Leading to Conviction

In March 2002, Godinez was indicted on one count each of possession of cocaine in an amount exceeding 1,000 grams in violation of Ohio Rev. Code § 2925.11(A) & (C)(4)(f) and trafficking in cocaine in an amount exceeding 1,000 grams in violation of Ohio Rev. Code § 2925.03(A)(2) and (C)(4)(g).[4] Each count also contained a major drug offender specification pursuant to Ohio Rev. Code § 2941.1410.[5] Subsequent to a several year period during which Godinez absconded from the jurisdiction of the court, he was re-arrested,[6] after which time Godinez withdrew his not guilty plea and entered a written plea of no contest pursuant to *North Carolina v. Alford*[7] to one count of possession of cocaine (R.C. § 2925.11(A) and (C)(4)(f)) in exchange for the remaining count and all specifications being dismissed.[8] On December 4, 2008, (journalized December 10, 2008) Godinez was sentenced to a mandatory 7 year term in prison.[9] At the time of sentencing, Godinez was advised of his right to appeal the sentence.[10] No timely direct appeal was filed. See Ohio App. R. 4(A).

### B. Motion for Delayed Appeal

On June 7, 2013, Godinez filed a *pro se* motion for delayed appeal pursuant to App. R. 5(A), with the sixth district court of appeals, in an attempt to appeal his December 2008 conviction.[11] In support of the motion, Godinez averred that he was actually innocent.[12] He also argued that he was deprived of effective assistance of counsel, stating that trial counsel failed to

---

[4] ECF Doc. No 5, Ex. 2, Page ID Nos. 68-70.
[5] Id.
[6] ECF Doc. No. 5, Ex. 6, Page ID Nos. 100-102
[7] 400 U.S. 25 (1970)
[8] ECF Doc. No. 5, Ex. 3, Page ID Nos. 71-73.
[9] ECF Doc. No. 5, Ex. 5, Page ID Nos. 93-94.
[10] ECF Doc. No. 5, Ex. 6, Page ID No. 105 & ECF Doc. No. 5-5, Ex. 5, Page ID No. 93.
[11] ECF Doc. No. 5, Ex. 9, Page ID Nos. 112-119.
[12] ECF Doc. No. 5, Ex. 9, Page Id. No. 112.

seek full and fair discovery, failed to adequately prepare for trial, failed to exercise compulsory process for exculpatory evidence in favor of Godinez, failed to seek dismissal of charges in violation of the right to a speedy trial, unlawfully coerced Godinez resulting in an involuntary no contest plea, and failed to direct an appeal as of right despite giving assurances that such an appeal would be filed on his behalf.[13] Finally, Godinez argued that he was denied due process and equal protection under the law when the trial court denied his motion to suppress evidence in the case.[14]

On August 6, 2013, the state appeals court enforced App. R. 4(A)'s 30-day timely appeal filing period, finding Godinez had been informed of his appellate rights at the time of sentencing and had not demonstrated good cause to explain the more than four-year delay in filing the appeal.[15]

On September 19, 2013, Godinez filed a timely *pro se* notice of appeal with jurisdiction memorandum in the Ohio Supreme Court from the court of appeals August 6, 2013, order.[16] On December 24, 2013, the Ohio Supreme Court declined jurisdiction.[17]

**C. Federal Habeas Petition**

The instant *pro se* petition for habeas corpus relief was signed by Godinez on November 14, 2014, and docketed with the court on January 5, 2015.[18] On March 30, 2015, Respondent filed a return of writ opposing the petition.[19] Godinez did not file a response to Respondent's return of writ.

---

[13] Id. at Page ID Nos. 112-115.
[14] Id. at Page ID Nos. 115-116.
[15] ECF Doc. No. 5, Ex. 10, Page ID No. 120-122.
[16] ECF Doc. No. 5, Ex. 12, Page ID Nos. 125-126 & Ex. 13, Page ID Nos. 127-147.
[17] ECF Doc. No. 5, Ex. 14, Page ID No. 148.
[18] ECF Doc. No. 1, Page ID Nos. 1 & 5.
[19] ECF Doc. No. 5, Page ID Nos. 15-47.

## III. Positions of the Parties

### A. Petitioner's Grounds for Relief

Godinez petition asserts seven grounds for relief:

**GROUND ONE:** Fourth Amendment Search and Seizure claim.

**Ground One Supporting Facts:** Petitioner Fernando Godinez ("Petitioner Godinez"), an actual innocent, was approached by a Toledo, Ohio police officer as the result of racial profiling, in regards to an unoccupied automobile parked in the public parking area of a truck stop located on U.S. Interstate 80/90. Petitioner Godinez had neither ever operated the Chevy Lumina nor was Petitioner the owner of the vehicle, the police officer went on to conduct an illegal search and seizure of Petitioner Godinez' person, and ultimately located illegal drugs in the Chevy Lumina. As a result thereof, the police executed the illegal arrest and detention of Petitioner Godinez absent probable cause and reasonable suspicion.

**GROUND TWO**: Sixth and Fourteenth Amendments Due Process Miranda claim.

**Ground Two Supporting Facts**: Throughout the illegal search and seizure of Petitioner Godinez, resulting in his unlawful arrest and detention, at no time did the arresting police officers provide Petitioner Godinez a *Miranda* warning.

**GROUND THREE**: Sixth Amendment Ineffective Assistance of Counsel under *Brady* claim.

**Ground Three Supporting Facts**: Petitioner Godinez' state trial counsel failed to seek a full and fair discovery consistent with *Brady*, which remained critical toward proving the actual innocence of Petitioner Godinez.

**GROUND FOUR**: Sixth Amendment Ineffective Assistance of Counsel under Compulsory Process and failure to adequately prepare for trial claim.

**Ground Four Supporting Facts**: State trial counsel failed to seek a full and fair trial discovery, adequately prepare for trial, file motion to dismiss for denial of fast and speedy trial, and failed to refrain from the exercise of unlawful coercion that resulted in an involuntary, unkowing [*sic*], and unintelligent no contest (nolo contendere) plea by one actually innocent.

**GROUND FIVE:** Sixth Amendment Ineffective Assistance of Counsel under lawful coercion and actual innocence claim.

**Ground Five Supporting Facts:** If not for the unlawful coercion on behalf of

> state trial counsel, Petitioner Godinez would not have entered a no contest (nolo contendere) plea as one actually innocent.
>
> **GROUND SIX:** Sixth Amendment Ineffective Assistance of Counsel under failure to effect direct appeal as of right claim.
>
> **Ground Six Supporting Facts:** Petitioner Godinez was deprived of the protected liberty interest of a direct appeal as of right, where his state trial attorney failed to file an appeal in his behalf.
>
> **GROUND SEVEN:** Sixth Amendment Ineffective Assistance of Counsel under failure to effect direct appeal as of right claim.
>
> **Ground Seven Supporting Facts:** Petitioner Godinez was deprived of the protected liberty interest of a direct appeal as of right, where the state trial court failed to adequately advise Petitioner Godinez of his right to a direct appeal as of right, failed to appoint appellate counsel in behalf of Petitioner Godinez, and where the Ohio appellate court failed to allow Petitioner Godinez' delayed appeal.

Godinez made no request for the appointment of counsel and he has not requested an evidentiary hearing.

### B. Government's Opposition

In its opposition brief, the government objects to the petition on several grounds. As relevant here, the government argues that Godinez' petition is untimely and should be barred under 28 U.S.C. § 2244(d).[20] The government also asserts that equitable tolling is not appropriate and that Godinez has not demonstrated actual innocence.[21]

## IV. Analysis

### A. Jurisdiction

Subsequent to the completion of briefing in this matter, Godinez was released from imprisonment on July 25, 2015.[22] As such, the Court will *sua sponte* address the issue of subject

[20] ECF Doc. No. 5, Page ID Nos. 19-25.
[21] Id., Page ID Nos. 25-27.
[22] Ohio Department of Rehabilitation and Correction website. http://www.drc.ohio.gov/OffenderSearch/details.aspx?id=A596010&pg=x (last visited June 29, 2016).

matter jurisdiction. Habeas relief is reserved for persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Nevertheless, federal jurisdiction attaches on a petition for a writ of habeas corpus when a petitioner in custody files for the writ, and jurisdiction is not defeated solely by the release of the petitioner before completion of proceedings on the application. *Carafas v. LaVallee*, 391 U.S. 234, 238, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968). When a petitioner continues to suffer "collateral consequences" of an imposed sentence sufficient to give the petitioner "a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him," the cause is not moot. *Id.* at 237 (quoting *Fiswick v. United States*, 329 U.S. 211, 222, 67 S.Ct. 224, 91 L.Ed. 196). Collateral consequences are sufficient to avoid mootness when they are severe, immediate (*i.e.*, not speculative), and not shared by the public generally. *Hensley v. Municipal Court*, 411 U.S. 345, 351–52, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973). Collateral consequences sufficient to avoid mootness include restraints on liberty accompanying release on recognizance pending trial (*Id.; Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 319–20, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984)) and civil disabilities resulting from a felony conviction (*Carafas* at 237). They do not include such nonstatutory consequences as diminished employment prospects or possible effects on sentences in potential future criminal proceeding. *Lane v. Williams*, 455 U.S. 624, 632–33, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982). A petitioner who is free on post-release control is in the custody of the parole board, within the meaning of the habeas corpus statute, since post-release control "involves significant restraints on petitioner's liberty because of his conviction and sentence, which are in addition to those imposed by the State upon the public generally." *Jones v. Cunningham*, 371 U.S. 236, 242, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). Consequently, as Godinez is currently on post-release control until July 2020,[23] he is "in

[23] Id.

custody" for purposes of establishing this court's jurisdiction over his petition.

**B. Statute of Limitations**

The state has moved to dismiss Godinez' petition on the ground that it is time-barred under applicable law.[24] Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),[25] a person in custody under a judgment of a state court must file an application for a writ of habeas corpus within ***one year*** from the ***latest*** of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

**a. § 2244(d)(1)(A)**

Godinez' petition arises from his December 2008 conviction, after a nolo contender plea, to one count of possession of cocaine in violation of Ohio Revised Code § 2925.11(A)&(C)(4)(1).[26] On December 4, 2008, Godinez was sentenced to serve a mandatory prison term of 7 years and on December 10, 2008, the judgment entry of conviction was filed for journalization and become a final appealable order.[27] Godinez did not pursue a direct appeal and

---

[24] ECF Doc. No. 5, at Page ID Nos. 20-25.
[25] Pub. L. No. 104-132, 110 Stat. 1214.
[26] ECF Doc. No. 5, Ex. 5 at Page ID Nos. 93-94.
[27] Id.

the thirty day filing period for a timely appeal expired on January 9, 2009.[28] Ohio App. R. Rule 4(A)(1). Under 28 U.S.C. § 2244(d)(1)(A), Godinez' one year period to file a 28 U.S.C. § 2254 federal habeas petition began to run the day after the expiration of his original appeal period, or January 10, 2009.[29] The period ended on January 10, 2010, absent the application of a later filing period under § 2244(d)(1)(B), (C), or (D) or the application of statutory or other tolling principles. In his petition Godinez acknowledged that his petition is untimely but contends that his untimeliness should be excused because he was "denied his direct appeal as of right" and that the time for filing his petition was tolled until the Ohio Supreme Court decision of December 24, 2013. Godinez also argues that he is actually innocent.

**b. § 2244(d)(1)(B) & (C)**

Godinez has not argued, nor is there evidence to suggest, that the provisions of 28 U.S.C. §§ 2244(d)(1)(B) and (C) apply to establish a later commencement of the statute of limitations.

**c. § 2244(d)(1)(D)**

With regard to § 2244(d)(1)(D), the statute provides that the one-year habeas period could commence on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Claims One, Two, Three, Four, and Five relate to Godinez' arrest and pretrial preparations and, therefore, involve factual predicates that were discoverable at the time of Godinez' 2008 change of plea.[30] Thus, Subsection (D) is inapplicable to those five claims. In Claim Six, Godinez argues that trial

---

[28] Although Godinez argues, in Ground Seven of his petition, that the trial court failed to advise him of his right to appeal, the record reflects that he was advised of his appellate rights on several occasions by the trial court. See ECF Doc. No. 5-1, Ex. 3 at Page ID No. 72; Ex. 4 at Page ID No. 87; Ex. 5 at Page ID No. 93; and Ex. 6 at Page ID No. 105.
[29] 28 U.S.C. § 2244(d)(1)(A)
[30] ECF. Doc. 1, at Page ID Nos. 3-4.

counsel was ineffective for failing to file a timely direct appeal,[31] a fact that Godinez should have known with the exercise of reasonable diligence in a matter of weeks or months after the 30-day period for fling a direct appeal expired on January 9, 2009. Finally, in Claim Seven Godinez argues that the trial court failed to advise him of his right to appeal and the appointment of appellate counsel on his behalf.[32] Similar to Claim Six, the factual predicate of these claims should have been known within weeks or months after the 30-day period for filing a direct appeal expired. Accordingly, the factual predicate of those claims could have been discovered with due diligence several years prior to the filing of his current habeas petition.

However, Claim Seven also contains a sub-claim that the Ohio appellate court wrongfully denied his delayed appeal.[33] Inasmuch as the factual predicate for this particular sub-claim was not discoverable until the appeals court denied leave to file a delayed appeal on August 6, 2013,[34] the government admits that the sub-claim is not time barred[35] where Godinez filed within one-year of the denial of jurisdiction by the Ohio Supreme Court on December 24, 2013.[36] Nonetheless, the government argues that this particular sub-claim of Ground Seven is noncognizable in a federal habeas petition because it only raises a state law issue. The undersigned agrees and the cognizability of the sub-claim of Ground Seven is further discussed in Section C below.

[31] Id. at Page ID No. 4.
[32] Id.
[33] Id.
[34] ECF Doc. No. 5, Ex. 10, Page ID Nos. 120-122.
[35] ECF Doc. No. 5, Page ID No. 25.
[36] Godinez' habeas petition was signed with declaration on November 14, 2014, and docketed on January 5, 2015. Under the prison mailbox rule, a habeas petition is deemed filed when the prisoner gives the petition to prison officials for filing in the federal courts. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir.2002) (citing *Houston v. Lack*, 487 U.S. 266, 273, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) and codified by Fed. R. App. P. 4(c)(1). It is unknown when Godinez placed his petition in the prison mail; however, it will be assumed for our purposes that he placed the petition in the prison mail system on the date of his signed declaration, November 14, 2014. *See Freeman v. Tibbals*, 83 F. App'x 707, 708 (6th Cir. 2003) (approving the district court's application of the petitioner's habeas petition signing date in its analysis of the statute of limitations).

**d. Statutory Tolling**

28 U.S.C. § 2244(d)(2) "provides for statutory tolling of the limitations period during the pendency of properly filed motions for state post-conviction relief, or other collateral review." Godinez made no challenge to his 2008 conviction until he filed his Rule 5(A) motion for leave to file a delayed appeal with the Ohio court of appeals on June 7, 2013.[37] However, Godinez' Rule 5(A) motion had no effect on the AEDPA limitations period because the Rule 5(A) motion did not restart the limitations period. "The [statutory] tolling provision does not . . . 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman v. Brigano*, 346 F.3d 598, 602 (quoting *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)). Once the limitations period is expired, state collateral review proceedings can no longer serve to avoid the statute of limitations bar. *Keeling v. Warden, Lebanon Correctional Inst.*, 673 F.3d 452, 460 (6th Cir. 2012). As the Sixth Circuit noted in *Searcy v. Carter,* 246 F.3d 515, 519 (6th Cir.2001):

> Leave to file a late notice of appeal can be sought at any time, even many years after conviction. If the one-year period of limitations did not begin to run until such an application for leave to appeal was denied, the one-year statute of limitations would be meaningless; merely by delaying his application for leave to file a late notice of appeal, a petitioner could indefinitely extend the time for seeking habeas relief. The statute of limitations provision of the AEDPA would thus be effectively eliminated, a clearly unacceptable result.

*See also Wheeler v. Jones,* 226 F.3d 656, 660 (6th Cir.2000) (noting that "if [habeas petitioner's] position were adopted, state court judgments would never attain finality because they would always be subject to reconsideration on a motion for a delayed appeal"). Although a delayed appeal does not restart the AEDPA limitations period, it may toll it. *Searcy,* 246 F.3d at 519. In

[37] ECF Doc. No. 5, Exhs. 8 & 9.

this case, however, since the one-year AEDPA limitation period had expired more than three years before Godinez filed his Rule 5(A) motion, there remained no time left to toll.

**e. Equitable Tolling**

The AEDPA's §2244(d)(1) statute of limitations is also subject to equitable tolling, "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control." *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)), cert. denied, 133 S. Ct. 187 (2012). *See also*, *Holland v. Florida*, 560 U.S. 631, 649 (2010) (the statute of limitations for habeas petitions is "subject to equitable tolling in appropriate cases."). Godinez bears the burden of establishing that he is entitled to equitable tolling. *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003). The petitioner must point to extraordinary circumstance that prevented timely filing.

Moreover, equitable tolling is granted "sparingly." *Hall*, 662 F.3d at 749 (quoting *Robertson*, 624 F.3d at 784). Although the Sixth Circuit previously used a five-factor approach in determining whether a habeas petitioner is entitled to equitable tolling, the two part test established in *Holland v. Florida* has replaced the five-factor inquiry as the "governing framework" to apply. *Hall*, 662 F.3d at 750 (citing *Robinson v. Easterling*, 424 F. App'x 439, 442 n.1 (6th Cir. 2011), cert. denied, 132 S. Ct. 456 (2011)). Therefore, a habeas petitioner is entitled to equitable tolling only if he meets his burden to demonstrate that (1) "he has been diligent in pursuing his rights;" and (2) that "an extraordinary circumstance caused his untimely filing." *Hall*, 662 F.3d at 750; *see also*, *Pace*, 544 U.S. at 418.

Godinez argues that his December 2008 judgment of conviction was not final because he was "denied his direct appeal of right and time was tolled until the Ohio Supreme Court decision

of December 24, 2013." His argument that he was denied his right of direct appeal appears to be based on his claims that his attorney failed to file an appeal on his behalf and that the state trial court failed to adequately advise him of his right to appeal.[38] However, the record belies Godinez' contention that he was uninformed of his right to appeal. See ECF Doc. 5, Ex. 3, at Page ID no. 72 (November 20, 2008, signed plea agreement); Ex. 4, at Page ID no. 87 (November 15, 2008, plea hearing transcript); Ex. 5, at Page ID no. 93 ( December 10, 2008, sentencing judgment entry, "Defendant given notice of his appellate rights under R.C. 29530.08…); Ex. 6, at Page ID no. 105 (December 4, 2008, sentencing hearing, "Defendant is advised of limited rights of appeal, which appeal, if taken, will have to be done within 30 days of today's date and may embrace the sentence that the Court has just imposed."). Furthermore, a petitioner's *pro se* status and his unawareness of the law provide no basis for equitable tolling. The Courts have uniformly held that neither a prisoner's *pro se* status nor his lack of knowledge of the law constitute extraordinary circumstances justifying equitable tolling *See Lattimore v. DuBois*, 311 F.3d 46, 55 (1st Cir. 2002); *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000); *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000). The Supreme Court also has "never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness." *Johnson v. United States*, 544 U.S. 295, 311, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005). Furthermore, Godinez has not submitted any evidence of his diligence in pursing his claims. He filed his motion for delayed appeal more than four years after his December 2008 conviction.

Godinez has failed to meet his burden of establishing that he pursued his claim with diligence or that some extraordinary circumstance prevented him from filing a timely claim. Accordingly, equitable tolling is not appropriate.

[38] ECF Doc. 1, Page ID Nos. 3-4.

**f. Actual Innocence**

In *McQuiggin v. Perkins*, ___U.S.___, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013), the Supreme Court held that actual innocence, if proved, may overcome the expiration of AEDPA's one-year statute of limitations. The Court noted that a claim of actual innocence is not a request for equitable tolling; rather, it is a request for an equitable exception to § 2244(d)(1). *Id.* at 1931. The Supreme Court explained, however, that “tenable actual-innocence gateway pleas are rare.” *McQuiggin*, 133 S.Ct. at 1928. In such cases, a petitioner must “support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial.” *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995).

Assuming that the actual innocence gateway provides a basis for equitable tolling for a petitioner, such as Godinez, who pled no contest, Godinez has not supported his actual innocence claim with any new reliable evidence that was unavailable at the time he entered his plea. In *Souter v. Jones*, the Sixth Circuit outlined the actual innocence standard:

> The United States Supreme Court has held that if a habeas petitioner “presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims.” *Schlup*, 513 U.S. at 316, 115 S.Ct. 851. Thus, the threshold inquiry is whether “new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial.” *Id.* at 317, 115 S.Ct. 851. To establish actual innocence, “a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.” *Id.* at 327, 115 S.Ct. 851. The Court has noted that “actual innocence means factual innocence, not mere legal insufficiency.” *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). “To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.” *Schlup*, 513 U.S. at 324, 115 S.Ct. 851. The Court counseled however, that the actual innocence exception should “remain rare” and “only be applied in the ‘extraordinary case.’ ” *Id.* at 321, 115 S.Ct. 851.

395 F.3d 577, 589-90 (6th Cir. 2005). Accordingly, because Godinez has not offered any new reliable evidence of his factual innocence, the *Souter/Schlup* actual innocence standard has not been met. His mere repeated contentions that he is actually innocent are insufficient as a matter of law.

Based upon the foregoing analysis, the Court should find that, except for the final sub-claim in Ground Seven, each of the several grounds urged in Godinez' petition is untimely and barred by provisions of 28 U.S.C. § 2241(d)(1).

**C. Merits as to the remaining ground**

As discussed above, the only claim that is not time barred is the last sub-claim of Ground Seven where Godinez contends, without further argumentation, that he was "deprived of the protected liberty of a direct appeal as of right…where the Ohio appellate court failed to allow Petitioner Godinez' delayed appeal."[39] The Ohio appellate court denied Godinez' motion for leave to file a delayed appeal under Ohio App. R. 5(A), reasoning that he "was informed of his right to appeal his sentence" and he "ha[d] not set forth sufficient reasons for his more than four year delay in filing a notice of appeal."[40]

The government argues, that the remaining sub-claim of Ground Seven should be denied as noncognizable in a federal habeas proceeding.[41] For the reasons that follow, the undersigned agrees that the remaining sub-claim in Ground Seven should be denied as noncognizable.

A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement violates the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62 (1991). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41,

[39] ECF Doc. 1, at Page ID No. 4.
[40] ECF Doc. 5, Ex. 10, at Page ID Nos. 121-122.
[41] ECF Doc. 5, at Page ID Nos. 38-40.

104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). It is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). A federal court "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (internal quotation omitted). Claims of state law error are not cognizable in federal habeas corpus proceedings "unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution." *Cristine v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008).

Moreover, when a petitioner claims that the Ohio Court of Appeals improperly denied his motion for delayed appeal under Ohio Appellate Rule 5(A), such a claim addresses a collateral matter that is unrelated to petitioner's detention. *Kelley v. Brunsman*, 625 F. Supp. 2d 586, 598-599 (S.D. Ohio 2009) (citing *Korbel v. Jeffreys*, 2007 WL 3146248, *3 (S.D.Ohio Oct. 24, 2007) (Report and Recommendation), *adopted*, 2008 WL 207932 (S.D.Ohio Jan. 24, 2008)). Claims which challenge collateral matters unrelated to the underlying conviction giving rise to a petitioner's conviction are not cognizable in federal habeas corpus proceedings. *See Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir.2007); *Kirby v. Dutton*, 794 F.2d 245, 246–47 (6th Cir.1986). As pointed out in *Cress*:

> The Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review. *See Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir.1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir.2002). We have clearly held that claims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because " 'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody.' " *Kirby*, 794 F.2d at 246 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)); *see also Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) ("States have no obligation to provide this avenue

> of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." (citation omitted)). A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not "result [in] ... release or a reduction in ... time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention." *Kirby,* 794 F.2d at 247. "Though the *ultimate* goal in" a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue[ ] ... is not in any way related to the confinement." *Id.* at 248. Accordingly, we have held repeatedly that "the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration." *Id.* at 248, 247; *see also Alley v. Bell,* 307 F.3d 380, 387 (6th Cir.2002) ("error committed during state post-conviction proceedings cannot [*sic* ] provide a basis for federal habeas relief" (citing *Kirby,* 794 F.2d at 247)); *Greer v. Mitchell,* 264 F.3d 663, 681 (6th Cir.2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief").

*Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007). Habeas courts have frequently rejected claims challenging the Ohio Court of Appeals' denial of delayed appeal motions under Ohio R. App. P. 5 on the ground that such claims address a collateral matter that is unrelated to the petitioner's detention. *See, e.g., Quillen v. Warden, Marion Correctional Inst.,* No. 1:12cv160, 2013 WL 275973 at *19-*20 (S.D.Ohio Jan. 24, 2013), Report & Recommendation *adopted* 2013 WL 1315089; *Kelley v. Brunsman,* 625 F.Supp.2d 586, 598–99 (S.D.Ohio June 9, 2009); *Jones v. Warden, Chillicothe Corr. Inst.,* No. 1:07cv349, 2008 WL 618639, at *1, *7 (S.D.Ohio Feb. 29, 2008); *Korbel v. Jeffreys,* No. 2:06cv625, 2007 WL 3146248, at *3 (S.D.Ohio Oct. 24, 2007), Report & Recommendation *adopted,* 2008 WL 207932 (S.D.Ohio Jan. 24, 2008); *Lucas v. Carter,* 46 F. Supp. 2d 709, 713 (N.D. Ohio 1999). And in *Retting v. Jefferys*, this court rejected a similar habeas challenge to a motion for delayed appeal finding that petitioner had not established that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law because the decision to deny a motion for leave to file a delayed appeal is solely within the discretion of the appellate court. 557 F. Supp. 2d 830, 832 &

842 (N.D. Ohio 2008) (J. Polster adopting the Report & Recommendation of J. McHargh). The misapplication of state law is not cognizable in a federal habeas proceeding unless a petitioner can prove that the error deprived him of a fair trial or proceeding. *Wentworth v. Morgan,* No. 06-17-KKC, 2006 WL 3760256 at *6 (E.D.Ky. Dec.14, 2006) (citing *Mattheson v. King,* 751 F.2d 1432, 1445 (5th Cir.1985)). Only when the ruling is arbitrary and capricious does the misapplication of state law violate due process. *Id.* (citing *Richmond v. Lewis*, 506 U.S. 40, 50, 113 S.Ct. 528, 121 L.Ed.2d 411 (1992)). Here Godinez fails to provide any support for his conclusory assertion that the court of appeals decision implicated his federal due process rights. Thus, habeas corpus relief may not be granted on the basis of the denial of Godinez' post-conviction motion and his claim for relief as to the final sub-claim of Ground Seven is not well taken.

## V. Conclusion

In light of the foregoing analysis, I recommend that the court deny the entirety of Petitioner Fernando Godinez' petition for a writ of habeas corpus. This recommendation arises from the following conclusions: Grounds One through Six should fail as they are untimely. The last sub-claim to Ground Seven should fail as it raises a noncognizable claim and the remainder of Ground Seven should fail as untimely.

Dated: July 18, 2016

Thomas M. Parker
United States Magistrate Judge

**VI. Notice to Parties Regarding Objections:**

Local Rule 73.2 of this court provides:

> Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).